Final case on our call this morning is agenda number 12, case number 109041, James Hulbert v. Andrew Charles, et al., etc. In listening to the arguments this morning, and in reflecting somewhat on discourse that the recent nominee to the United States Supreme Court, what I reflected on, particularly in hearing the arguments this morning, is the importance of continuity in the law and precedent, and the relative, relative to that, the unimportance of the personalities involved. I mention that because both counsel, the trial court, and to some extent the appellate court in this case, all focused upon and argued that this court's prior decision in People v. Moore really serves as the framework for the decision in this case. The interpretation and the application of this court's decision in People v. Moore, there are differing opinions on how that should be applied and what it really stood for. But the focus really revolves around that case and that decision. And in People v. Moore, it is our position that this court decided this issue already. The trial court, the appellate court, and counsel for the defendants disagree with that. Our position is that in Moore, this court focused upon the nature of the summary suspension proceeding, and in fact, made repeated references to appellate court decisions and confirmed that what the court was focusing on in Moore is the nature of the summary suspension proceeding. And whether, as a matter of policy, its application to bar, under principles of collateral estoppel, a subsequent adjudication, in that case a criminal prosecution, should exist. Or whether, as a matter of policy, given the nature of that summary suspension hearing, it would be inappropriate to apply collateral estoppel. Although it is correct, and this is relied upon by both the appellate court and counsel for the defendants, that Moore involved the issue of application to a parallel related criminal proceeding, there was nothing in Moore to indicate that the holding or the underlying policy determination was only applicable in criminal proceedings. In fact, the court in Moore cited the Stice decision, which was an appellate decision, and cited for this purpose that case. The court in Moore noted that the summary suspension proceedings are intended to quickly resolve relatively narrow issues, and that the application of collateral estoppel would frustrate the expediency with which summary suspension hearings are to be administered. The court noted that if it were to be applied from the summary suspension adjudication to the related criminal prosecution, the state would be forced to call witnesses and treat the summary suspension hearing as a trial. It rejected the request to apply collateral estoppel under those circumstances because of that policy determination. In Felitti, which is also cited in Moore, the court noted that collateral estoppel would not be applicable when there is a difference in either the quality or the extensiveness of the underlying proceedings. Let me just, just factually, on whose motion was the DUI ticket dismissed? I do not know whether, I do not recall that being in the record, but what I can tell you is that the case was called for trial. There was an issue relating to the state's preparedness for trial. The trial court dismissed the proceedings. There was a subsequent effort by the state to reinstate the DUI prosecution. The court reconsidered that, and then subsequently the case was dismissed by Judge Klaus as a result of a double jeopardy argument. Under summary suspension, you have 30 days to attack that. And usually that's done first. This is a little bit unusual, isn't it? Well, what happened in this case with respect to the summary suspension proceeding, Your Honor, as you know, the statutory scheme for that is that the time period for your request or a petition to be filed for a hearing commences with the service of the notice of summary suspension and the issuance of a confirmation by the Secretary of State's office. You then have, under the statute and what's been amended very recently, 90 days in which to file that petition. Previously there was not a time limit on that. There's currently a 90-day window. Once you file your petition, there's a question. My question simply is, the summary suspension normally is disposed of first. It wasn't dismissed before the hearing on the summary suspension? No. No. The hearing on the statutory summary suspension, which, as the Court knows, is generated by virtue of the filing of a petition, and then the Court is correct that there is a 30-day window within which the State must afford the defendant an opportunity to file a petition. And under recent case law, that can occur at the appearance date in lieu of that 30-day window after the filing of the petition. But the nature of the summary suspension proceeding, which this Court pointed to and more, and appellate courts have pointed to, is that it's in the nature of an administrative function. It relates to the license, and in fact, in some cases, they characterize that hearing as a license suspension hearing. It can be adjudicated upon the officer's written reports under the statute that is in place currently. So what would normally be inadmissible in a hearing at which there are rights of confrontation or cross-examination and otherwise, the legislature has provided this statutory scheme, which the Court focused on and more, for an expeditious, informal, somewhat unusual for the court system to have a hearing. And that officer's reports can be used as substantive evidence to deny a petition to rescind a statutory summary suspension, all of which are intended to be so expedited that neither the State nor the defendant should be obligated to put on their entire trial evidence, which they would ultimately have to do in defending or prosecuting the underlying DUI case. It wasn't the Court's decision and more that because there is a subsequent prosecution or a related prosecution, the underlying proceeding should not be allowed to have an estoppel effect. It was the nature of the underlying proceeding, and all of the appellate decisions relied upon and more focused upon that as well. I would also note, and this is recited in the brief, that in People v. Teller, the courts have approved limited discovery in summary suspension proceedings under the Schmidt decision. And in People v. Brummett, that was approved as well. So we have continual acknowledgments of the limited, restrained, and expedited purpose for which a summary suspension hearing is held. But, counsel, under these circumstances, though, didn't you have sufficient incentive to litigate the issue of probable cause at the summary suspension so that collateral estoppel would be fair? The short answer to that, Your Honor, is no. The longer answer is that what the record reflects is that the summary suspension proceeding was handled much in the same fashion as most are. And I cite to the Secretary of State fact book or handbook in the briefs, which indicate there's approximately 50,000 DUI and summary suspension proceedings a year in this state. It was handled with an officer testifying, the defendant testifying on an expedited basis, no other witnesses, no discovery, none of the mechanisms by which we would normally ascribe the opportunity in a civil case for someone to fully and fairly litigate a disputed issue of fact. And that's consistent with the underpinnings of the summary suspension scheme, which this court also recognized in Gouma v. White, in which the court was addressing the question of whether an earlier judgment in a municipal ordinance violation case could have a stoppel effect on the admissibility of breathalyzer results in a subsequent proceeding. What would be the difficulty, counsel, of this court adopting a case-by-case analysis in this area? Because I note that the facts of this case, right, the officer testified, the plaintiff testified, right? The court viewed the videotape of plaintiff's sobriety test. So maybe in this summary suspension proceeding, there's more than the, you know, the summary suspension proceeding that happened five minutes before it. Should we look at that, or would that violate Moore since they did not adopt a case-by-case approach? I believe that Moore says that is, quote, unworkable. And that's the language that Moore used, and it's our position that that case-by-case approach truly is unworkable, because what would happen here is that in a subsequent prosecution, assuming that this same rule is applied to bar the state from re-litigating issues, as it would be applied to a defendant who seeks to re-litigate the issues in a different form or for a different purpose, assuming it is equally applied, what would happen here is that the court in every subsequent related or unrelated case would then have a case-by-case analysis and then have to have a mini-hearing about the opportunities to fully litigate and adjudicate these issues. And I think... Do you quarrel, counsel, with, I don't want to put words in your mouth, I mean, do you feel in this particular case that the problems with the typical summary suspension proceeding as they relate to the estoppel argument are not present because there was a full-blown hearing here? No, I think the same problems exist, and I would like to respond more fully to the Court's question, but I should acknowledge that much of this is beyond the record. But responding to the Court's inquiry, the same deficiencies that we see in any expedited proceeding and in particular summary suspension proceedings are existent in this case. A hearing, and I was not trial counsel for that summary suspension proceeding, but a hearing was held in which there was literally no discovery that had been undertaken or afforded prior to that hearing. It was held on an expedited basis. There was no witnesses brought in to corroborate or explain or contest or impeach the officer's testimony. The trial judge was confronted, with all due respect to this process, with a defendant who says, this is what occurred, and an officer who says, I interpreted differently, and this is in the record. If the Court looks at the trial judge's comments, and this appears in the transcript at 51, which is part of the record, what the Court says is, quote, I have to take into consideration that what we've got is an experienced and trained observer who for a long time has been observing driving habits and also the driving habits of people impaired. The Court deferred in part, large part, out of experience to the arresting officer in assessing whether or not this issue of probable cause had been sufficiently demonstrated to warrant a denial of the petition to rescind the summary suspension. In a full, with a full and in the record, what is otherwise a very expedited process. Additional witnesses could have been brought in by trial counsel on behalf of the defendant. Cross-examination of the officer's training and experience could have been employed. The reports of the officer, which I understand were not the basis in this case, since there was in-person testimony, but those reports would not be admissible. There would be evidence which could be adduced on behalf of the defendant to more fully understand the circumstances which existed at that time, including such things as, and this is noted in the brief, the defendant's repeated request for a blood test instead of a breath test. And the defendant's testimony and acknowledgement, which also appears on the video, that one of his legs is shorter than the other, and therefore in this case what we essentially had was an alphabet and a finger count test and an officer saying I detected an odor of alcohol. All of those proceedings were shortened. And the impact of that is important to take into account, because the impact, as the court knows, was one of the things that the court in Tolerico, which did impose a case-by-case type analysis from a guilty plea, was one of the things the court looked at there was what is the impact of the underlying proceeding on subsequent events, and did this defendant really expect that by virtue of that underlying proceeding, he was now going to be foreclosed in Tolerico from defending himself from a civil suit when he had a negotiated plea in a criminal case which the system encourages. In this case, the effect of the suspension, depending upon whether you're a first offender or not a first offender, is anywhere from three to six, although recently changed, six months to a year. But at the end of that suspension period, upon the payment of a reinstatement fee, your license is reinstated. It does not have the same long-term impact that either a conviction on the DUI has, or because a stop will should not be applicable, it would not have that long-term impact on related but distinct and independent proceedings. The summary suspension proceeding, if it is going to foreclose by virtue of estoppel, either subsequent prosecutions or precludes civil actions, will do exactly what this court admonished against and was concerned with and more, and that is turn that summary suspension proceeding into a preclusion for, and a mini-trial of, the DUI case. Yes, Your Honor. I may be in territory that I shouldn't be, but I've heard no discussion of the malicious prosecution case. Yes. And how does that impact on this matter that's before us today? In this way, I believe, Judge. The malicious prosecution case, and this is recited in the defendant's brief as well, is not a cause of action which has been favored in the law. In fact, the constraints on it are very stringent. You have to demonstrate not only an absence of probable cause, but malice. You have to demonstrate that criminal or civil prosecutions or probable proceedings were instituted. You have to indicate and prove that they were terminated in your favor. This is the way I think it impacts for purposes of today. In a malicious prosecution case, although I do not believe that this rule and more should be determined on a case-by-case basis based on the subsequent proceeding, because that's not what Moore talked about, but based on the subsequent proceeding, a malicious prosecution case has its own built-in biases. Again, it has its own biases. And I think it would be good to have a trial court that could make a decision against a plaintiff proceeding and proceeding successfully, not only in terms of the damages issue, but the malice issue, the probable cause issue, the termination in their favor. There are constraints Let's go back to that malice for a moment, that element of malice. Yes, Your Honor. There hasn't been an opportunity for anybody, for the plaintiff to prove malice, has there? No. Both the trial court and the appellate court expressly indicated that they were not going to rule upon that issue, and they ruled entirely upon this narrow legal issue regarding the application of the doctrine of collateral estoppel to any proceeding other than a subsequent related or unrelated criminal prosecution. They read the Moore decision to say this only applies to criminal prosecutions, and we're going to look at, on a case-by-case basis, notwithstanding Moore's directives, a case-by-case basis in every other type of case. If the probable cause issue doesn't terminate this case? Yes, Your Honor. Will the plaintiff be given, or should the plaintiff be given an opportunity on remand to prove, to try to prove malice? I believe that the plaintiff would have to be given that opportunity, because we're here arising from a grant of summary judgment on that issue of collateral estoppel. It would have to be remanded to the trial court for further proceedings consistent with this Court's opinion, which would include subsequent proceedings, discovery depositions relating to the question of malice.  Thank you, Your Honor. May it please the Court, Counsel, this is my first time here before this Court, and I am indeed honored to represent my clients here today. Opposing counsel? Counsel, we were really interested in your name. I apologize. My name is Stanley Freeman. I represent the defendants, Charles Andrews and the City of Urbana. Now it's officially on the record of the Supreme Court that you've been here. Thank you, Your Honor. Let me just ask you, I really don't know what the counsel said, the DUI was disposed of first, and then the summary suspension. But irrespective of which one was disposed of first, would it make a difference, either way, in the subsequent malicious prosecution case and how collateral estoppel will be applied? I would suggest, Your Honor, if the DUI prosecution was resolved in the criminal defendant's favor, and then there was a subsequent hearing thereafter on the suspension of his driver's license, it would really have no impact on the analysis today. I think it would still be, the analysis should be the same. It's the nature and the actual decisions made at the suspension hearing that are being applied today. And in this case, one of the elements that the plaintiff in this case must prove is that the defendant, Andrew Charles, acted without probable cause. He stopped him or arrested him without probable cause. Our position is simply that the suspension hearing determination that there was probable cause is a bar to him now coming before the court to argue that there was an absence of probable cause. And I would suggest to you, opposing counsel has indicated that there are 50,000 statutory summary suspensions in this case. And I would suggest to you that there are 50,000 statutory summary suspension hearings in the state of Illinois. If collateral estoppel was to give rise to a bar in a criminal prosecution, I would submit that there would be 50,000 statutory summary suspension hearings that were fought to the death, if you will, because of the effect and the impact or the potential impact on the DUI prosecution would force the state to really contest the statutory summary suspension. And that is the rationale and the gist of the decision of this court and more. That same rationale does not apply to the context of a civil lawsuit, in this case, for malicious prosecution. Simply, the state is not going to alter its behavior in the criminal prosecution or in the statutory summary suspension stage. Opposing counsel argues that a defendant at the suspension stage may have more concern than the defendant. There are concerns and risks for some prospective future litigation, but I would suggest to the court that given today's environment with the need for a driver's license, any litigant who has lost his driver's license has ample motivation and incentive to put his best foot forward at that suspension hearing to have the license reinstated. In this case, although it's after the fact, Mr. Holbrook has testified that he has lost $50,000, an approximation or an estimation, because of the loss of his license. Counsel suggests that that's a after-the-fact analysis, but in any case, the motivation to litigate an issue is the risk or the threat of a loss. In this case, Mr. Holbrook, plaintiff in this case, had the threat and the risk of losing a substantial amount of money. How do you specifically, Mr. Freeman, distinguish the Moore case? It's actually, Your Honor, Moore on its face applies only to a criminal or a subsequent criminal prosecution. The language used repeatedly in there discusses collateral, estoppel will not apply to a subsequent criminal DUI prosecution. But doesn't, I think opposing counsel argued that the focus of Moore was rather on the summary suspension proceeding than it was on the subsequent proceeding? And why wouldn't the rationale of that apply to a civil case as well as a criminal case? I would suggest that with respect to the suspension hearing and the nature of it, essentially the state can appear at that hearing and present a copy of a police report, not obligated to call witnesses. Because of that unique evidentiary option, the state may or may not have the incentive to actually defend or I guess you would defend a summary suspension hearing. But the plaintiff, on the other hand, because he does have available to him the rights to subpoena witnesses, compel the appearance of witnesses and present evidence, as well as the right to appeal. Basically, the summary suspension statute provides for the application of the rules of civil procedure. The Code of Civil Procedure applies. Given that he has that availability, and he has the option of initiating the suspension hearing, there is no reason or rationale really not to bind him by those results. He can prosecute it and assert whatever claims he may have with the motivation of the loss of a license. The legislature has directed or that the license suspension proceedings are to be swift and limited in scope, right? To the probable cause issue, as opposed to a full trial on the intoxication issue. And that's I think the concern of the court and more is that if the probable cause determination is determined adversely at that hearing, because the state chose to rely upon a traffic report rather than calling the police officer, the state should not then be precluded from introducing evidence because the issue of probable cause was already resolved. And those concerns, the impact on the prosecution, simply don't apply in a civil lawsuit when you've got a plaintiff who is motivated to... And I think that gets into the whole, that's why I asked counsel about the facts of this case. It gets all into the whether or not, under the facts of the particular case at hand, there was more presented or less presented and Moore does say that that is unworkable to do a case-by-case approach. So are we left with whether Moore applies only in the criminal context or are we left... Is that the basic answer to this question? If we find it goes past the criminal context, then plaintiff prevails. And if we find it's limited to DUI, or not DUI, in most cases DUI, that was a DUI case, right? Correct. Correct. The criminal context, then you prevail? That is essentially it, Your Honor. It boils down to simply that. But I would submit to the court that it's not the nature of the proceedings, the summary or the expedited proceedings that are critical. It's the dependence or the informality that the state has afforded and the impact that that would have on a criminal prosecution for DUI, with the probable cause finding going adversely to them. But again, I get back to the nature of the proceedings. In this particular case, I would suggest that the plaintiff has submitted to the trial court at the suspension hearing all that evidence which is available. Counsel has identified no witness, no piece of evidence that was not available to him at the trial court level, or at the suspension hearing anyway. And he's not identified any specific limitation on his right to present testimony or evidence at the suspension hearing. So a case-by-case approach really does accommodate all those concerns with respect to limitations on discovery or abbreviated procedures that might be imposed by a trial court. Collateral estoppel is an equitable doctrine. The court can consider the equities and the justice involved in a particular precise application. But an across-the-board prohibition with respect to civil litigation, I think, goes a little bit further than what at least the language of Moore suggests and implies. Counsel suggested that essentially because the suspension hearing has been described as an administrative in nature, that it really shouldn't be given collateral estoppel effect. I think the law is fairly straightforward. Collateral estoppel arises from judgments or decisions by administrative tribunals on a regular basis. And the law itself is not a basis to deny the application of collateral estoppel. Counsel, if your view prevails that collateral estoppel would apply, then the opposite would be true of what you suggested earlier, that municipalities, cities, counties, and so forth, would always want to make sure they have an airtight probable cause. Because they're looking over their shoulder in terms of future, not that there's many, but they want to make sure to protect themselves from a future malicious prosecution. So now what was supposed to be statutory in summary, you now have an incentive to also make it a full-blown. To preclude the potential malicious prosecution. I would suggest that the mere numbers, as it's distilled down from a suspension hearing to DUI prosecution to a civil lawsuit, the number of cases, the number is reduced dramatically, but then as far as the decision of the state to litigate or defend, I don't think it would turn everyone into a mini-trial. I suppose it could if the state is motivated and that foresightful to anticipate potential litigation. I suppose it would have the opposite effect. But the concern in Moore wasn't with potential future litigation, it was with the almost certain DUI prosecution that was going to follow. And that really was the focus of Moore. I know we're here today on the collateral estoppel issue, but in our brief we addressed the issue of malice that was raised at the trial court. It was raised at the appellate court level, neither court decided the case on that particular matter. If this court is inclined to decide against my clients on the collateral estoppel issue, I would urge that they consider the malice issue. And in this case, malice, again, an element of a malicious prosecution claim. Plaintiff has suggested that the absence of probable cause somehow gives rise to an inference or a suggestion that there is malice. The cases are clear, malice cannot be inferred based solely on the want of probable cause. Do we really have enough before us, Mr. Freeman, to decide that issue, the issue of malice, since it's really not been litigated below? Judge, or Your Honor, I can suggest that it was raised at the trial court level in our motion for summary judgment. It was briefed, it was argued. The evidence essentially as to malice comes from the plaintiff's deposition, which is, I suppose, it's the opposite of malice. He's identified no personal animosity, no personal reason why the police officer would have it in for him. In the absence of that, any evidence of that, there's no evidence of malice. Animosity does not necessarily equal malice, but in the absence of any animosity, you can't really jump to conclusions. There's some malice on the part of the arresting officer. But the malice issue really turns on whether, if you assume that there was no probable cause, does that absence give rise to some sort of inference of malice? And the cases are fairly straightforward, that malice cannot be inferred from a want of probable cause. It must be the absence of probable cause plus other circumstances. So you'd ask us to affirm on any basis, and that basis being the absence of malice. But, again, my question goes to, do we really, is there anywhere where a court below actually ruled on that issue, or did it stop at the collateral estoppel? So it would be up to us to address the depositions and, as a matter of law, decide the summary judgment issue is really what you'd be asking. Correct, Your Honor. Certainly that would be an option, but I would suggest that the court has the option to affirm on any basis supported or appearing in the record. And I would suggest or submit that the evidence on malice or the absence of malice is a record and would support affirming on that basis as well. And keeping up with what the Chief Justice had just said, I mean, if we find a collateral estoppel issue on behalf of the plaintiff, that's necessarily going to be litigated below, right, either by way of motion or trial. What would be litigated below the? Well, the malice is one of the elements. Yes, yes, of the malicious prosecution claim. But I guess the point I make is you could decide against me on the issue of collateral estoppel, but still affirm on the issue of malice as it appears in the record. Your Honors, I appreciate the time and I ask that you affirm the appellate court in this matter. Thank you. Just a couple brief points in response to that, Your Honors. Counsel said that there was ample opportunity and incentive to litigate at summary suspension hearing. All of these issues that arise in a subsequent malicious prosecution case, in particular with respect to the issue of probable cause. And this is noted in the brief. I would ask the court to be mindful in assessing that argument that amongst all of the other problems which would apply to the application of a decision in a subsequent adjudication, one of them is that every person who is unable to afford counsel charged with the DUI, risking possible imprisonment, is entitled to appointed counsel, generally a public defender, and that this court, as noted in the Flynn case, which is noted in the brief, in Cross v. Slater, said you're not entitled to appointed counsel for a summary suspension proceeding. So if someone who has a public defender wishes to contest the suspension of their license, they either have to find money, which apparently they couldn't find to hire private counsel to defend the criminal prosecution, to handle the summary suspension matter. I would also respectfully submit that then Teller, which limits discovery, is wrong. The use of police reports is wrong. If there is a bar created by virtue of collateral estoppel to any subsequent proceedings arising from a summary suspension proceeding, by necessity you're entitled then to a full and fair opportunity to litigate those issues. The Tallarico decision from this court went in its discussion through an extensive recitation of the facts below, including the advice of counsel and what the plea negotiations were and what the incentive was and what the impact of the plea negotiations would be long-term on the plaintiff. That case-by-case approach is simply unworkable, and the Moore court said so. And we would ask the court to reaffirm that aspect of Moore. When counsel indicates it's not really the nature of the underlying proceedings which is at issue, I would respectfully disagree. Both Moore and Guma v. White said it is the nature of those summary suspension proceedings which are at issue. The time, the money, the expense, the collateral consequences of litigating fully and fairly a summary suspension which could last at that point in time three months, or now six months, simply doesn't warrant the application of collateral estoppel to preclude all subsequent proceedings, and I would respectfully suggest that the bifurcation of that decision suggested by counsel, which is, don't apply collateral estoppel to the state in any subsequent proceedings, but apply it to the defendant, would not be appropriate. Before you leave, Mr. Kirchner, is there enough in this record for this court to decide the malice issue if we agree with you on collateral estoppel? There simply isn't, Judge. And neither, as the court noted, neither the circuit court who had the record before which did not include evidence, and in fact, in the defendant's own brief, there's one paragraph that says they haven't demonstrated malice. But this notion that if there's not personal animus, if the police officer didn't know this individual, didn't express hatred for him in some way, you can't demonstrate malice isn't true as a matter of law. And in fact, the case law which we cited in our brief indicates that an inference could be drawn by the jury in the absence of malice. Thank you, Your Honor. Case number 109041.